. [PHILADELPHIA, JANUARY 28th, 1837.]

## BROWN *against* ADAMS.

### IN ERROR.

1. The widow of an intestate, tenant in common, may maintain a writ of dower, as at common law, for her third of her husband's proportion of the land.

2. The acts of assembly which direct the method in which partition may be made in the Orphans' Court of the real estate of an intestate, and the widow's share set off to her, are confined to the case in which the intestate was *sole* seized.

3. The widow of an intestate, tenant in common, cannot maintain an action of partition in the common law courts against the co-tenant of the intestate.

UPON a writ of error to the District Court for the City and County of Philadelphia, it appeared, that James Brown and Elizabeth, his wife, (late Elizabeth Adams,) brought a writ of dower *unde nihil habet* against Robert Adams, to March Term 1836, of that court, and counted as follows :

"James Brown and Elizabeth Brown, his wife, late Elizabeth Adams, widow of William Adams, to the use of Charles Treichel, demand in right of said Elizabeth, who was the wife of William Adams, deceased, by their attorney, against Robert Adams, the third part of the one equal moiety or undivided half part of that certain lot, &c. on the north-west corner of High and Schuylkill Eighth streets, in the City of Philadelphia ; being the same premises which were held, in common, by the said William, in his life-time, and one Alexander Adams, as the dower of the said Elizabeth, by endowment of said William, heretofore her husband—by the writ of dower of this commonwealth, whereof she hath nothing, &c."

On the 25th of June, 1836, the defendant pleaded, "That William Adams, the former husband of Elizabeth Brown, the plaintiff, died, viz. on the 8th day of March, A. D. 1821, intestate, seized of the real estate out of which dower is claimed."

To this plea there was a general demurrer, and in July, 1836, the court below ordered judgment to be entered for the defendant.

The plaintiff, thereupon, sued out this writ of error, and on the return of the record, assigned for error the judgment so given.

(Brown v. Adams.)

Mr. *Wheeler*, for the plaintiff in error.—The facts are, that William Adams, and Robert Adams, the defendant, were tenants in common of the land. William died, leaving a widow, the plaintiff, and two minor children. In 1824, on the petition of the guardian of these children, the Orphans' Court made an order for the sale of their undivided interest in this land; and at the sale Robert Adams, the defendant, became the purchaser.

The intestate act of 22nd April, 1794, § 22, professes to make a provision for the wife in lieu of dower. This act does not apply to the case before the court, because it applies only to the case of *sole seisin*. The section is entirely based upon a sole seisin. *Feather* v. *Strohecker*, (3 *Penns. Rep.* 505,) where it is said, " if one tenant in common dies intestate, his heirs cannot have partition among themselves in the Orphans' Court, without first procuring the share of the intestate to be set off by act of the parties, or by action at the common law. The Orphans' Court have no authority to make partition among the tenants in common under such circumstances." But we cannot sustain partition in a common law court, because the widow is neither tenant in common, joint-tenant, or coparcener; for whom, alone, the " act concerning writs of partition" is provided. *Pringle* v. *Gaw*, (5 *Serg. & Rawle*, 536,) denies to her all those characters. We are driven to our writ of dower. In *Galbraith* v. *Green*, (13 *Serg. & Rawle*, 85,) the widow alleged that her husband died, seized; the children became estopped from insisting on such seisin; the husband, died, intestate, and not in possession of the premises. The widow's claim of dower was sustained. This was since the act of 1794. To deny a widow her action of dower, in case of intestacy, where there is sole seisin, would be to take from her trial by jury. Suppose a denial of seisin as to dower; alleged forfeiture by reason of adultery; or some personal disqualification pleaded against the widow, and denied.

" The legislature," (says Judge Yeates,) in *Emerick* v. *Harris*, (1 *Binn.* 424,) " cannot constitutionally impose any provisions substantially restrictive of the right of trial by jury. They may give existence to new forums; they may modify the powers and jurisdictions of former courts; still, the sacred, inherent right of every citizen, a trial by jury, must be preserved—it must remain inviolate as heretofore." Certainly, in relation to new rights, as in the order of inheritance, a new forum may be specified, but dower is no novelty. The position that the Orphans' Court has exclusive jurisdiction in our case, is open to many other remarks. It would deprive a widow, alien, or citizen of another state, of the benefit of the United States courts. It does not secure the damages for detention, provided by the statute of Merton, 20 Henry III. c. 1. It violates sound rules of construction. The expression of one remedy does not negative another. (2 *Institutes*, 200.) General words are not sufficient to take away jurisdiction; witness the juris-

diction which the Supreme Court claims by *certiorari ;* that which is awarded to the Common Pleas, notwithstanding the justice of the peace act. Then there is the general principle in reference to the construction of powers.

Mr. *Kittera,* for the defendant in error, argued that the act of 1794, conferred upon the widow, in cases of intestacy, a new right distinct from that of dower, and only to be enforced through the medium of the Orphans' Court. The District Court has recently decided in the case of *Clauges* v. *Clauges,* (*MS.*) that they have no jurisdiction of proceedings to make partition among the heirs of an *intestate.* The Orphans' Court has large chancery powers, and is competent to give relief in a case of this kind.

The opinion of the Court was delivered by

KENNEDY, J.—That the wife of Brown, the plaintiff, as the widow of William Adams, deceased, has a right or interest of some kind, in the land in question, cannot very well be denied. Indeed there is not the least colour for gainsaying it, unless it be that the sale of the land by the guardian of the two children, who were minors at the time and the only heirs of the deceased, made in pursuance of an order of the Orphans' Court, for the purpose of raising money for their maintenance and education, divested the mother and widow of all her right and interest therein. The Orphans' Court however had no authority to order a sale of her right or interest; it was merely the estate or interest of the minors themselves in the land, that the Orphans' Court was authorized, by the terms of the act of 1807, to decree a sale of for such purpose; and in fact it would seem from the deed of conveyance, that this was all that was sold and conveyed by the guardian to the defendant, who became the purchaser thereof at the guardian's sale. Seeing then that the widow has a right which is illegally withheld from her, it cannot be that she is without a suitable remedy for the recovery of it. The question then is, what must it be? It is evident that her case does not come within the provisions of the intestate law of 1794, which authorizes the Orphans' Court, upon the petition of the widow or any one or more of the children of the intestate to award an inquest for the purpose of making partition among the widow and heirs, of the real estate, which the intestate died seised of; because it is only where the intestate was sole seised at the time of his death, that the Orphans' Court can award such inquest. There is no power or authority given in any part of the act of 1794, or of any other act of assembly, to the Orphans' Court, to make partition of the real estate of an intestate, except as between his widow and heirs. But it is perfectly obvious, that unless he died sole seised, it is impracticable to make partition among them, without first making a partition

between the surviving tenant in common and the heirs of the intestate; which latter is not within the powers given to the Orphans' Court, to decree or order, and therefore cannot be done. And accordingly it was so ruled by this court in *Feather* v. *Strohecker*, (3 *Penn. Rep.* 505.) Hence it is clear that the widow here cannot be redressed by any proceeding in the Orphans' Court.

It would also seem, as the law has been understood, and indeed I may say settled on this subject, that she can have no remedy by an action of partition, wherein the proceeding is according to the course of the common law: For in *Pringle* v. *Gaw*, (5 *Serg. & Rawle*, 536,) it was held, that she could not join with the heirs of the intestate in maintaining an ejectment for the recovery of the land, which descended to them upon his death; because she had no such right to her third thereof, either as dower at the common law before assignment, or under our intestate laws, as would enable her either singly or conjointly with the heirs to maintain it; and that she had never been deemed either a joint-tenant, co-parcener or tenant in common, nor to have the interest of such in the land. Thus we are brought to the inevitable conclusion, that she cannot maintain an action of partition.

This being the case, it would seem as if she were likely to be remediless, unless she can sustain the present action. It therefore becomes necessary to inquire and see whether or not there be any insuperable objection to it. It is certainly not prohibited in terms by our intestate laws; and having seen that no other mode of redress is thereby provided, it is fair to conclude that the legislature, when they were acting upon this subject, intended that the common law should supply the requisite remedy for putting the widow in the possession and enjoyment of her right, whenever the same should be improperly withheld from her. That the present action may be maintained by a widow to recover her right of dower at common law, in lands whereof the husband died seised only of an undivided moiety, having held the same as tenant in common, is abundantly clear from the highest authority. Her right in such case is recognized by *Littleton*, sec. 44, who says, "if there be two joint-tenants of certain land in fee, and the one alieneth that which belongeth to him to another in fee, who taketh wife and after dieth; in this case the wife for her dower shall have the third part of the moiety, which her husband purchased, to hold in common (as her part amounteth) with the heir of her husband, and with the other joint-tenant, which did not alien; for that in this case her dower cannot be assigned by metes and bounds." See also *Perkins*, sec. 411. F. N. B. 351, letter I. And the remedy adopted here as well as the right is spoken of and distinctly recognized by Sir EDWARD COKE, in various places. In 1 *Inst.* 34 *b*, in speaking of the writ of dower, and the right of the wife to enter upon the land, by force of her recovery, without delivery by the sheriff, he says, " When the wife of one tenant in

common demands the third part of a moiety, yet after judgment she cannot enter until the sheriff deliver her one third part, albeit the deliverance of the sheriff shall reduce it to no more certainty than it was." And again in 37 *b*, he reports, "if there be two tenants in common, and the wife of one of them bring a writ of dower to be endowed of a third part of a moiety, and have judgment to recover, yet cannot she enter without assignment, albeit the assignment cannot give her any certainty, because her husband's estate was uncertain." And in *Sutton and Wife* v. *Rolfe*, (3 *Lev.* 84,) the very point was determined, that the wife was entitled to maintain her writ of dower for a third part of a third part of the land, where her husband was tenant in common, and died seised of an undivided third part thereof, against the heir and the surviving tenants in common, before partition was made of the same : for otherwise they might make no partition, and by this means defeat the widow altogether of her right of dower. See also *Glefold* v. *Carr*, (*Brownl.* 127.) 2 *Bac. Abr.* (*per Wilson*,) 377. This being then the appropriate remedy for the recovery of dower under circumstances like the present, at the common law, there is certainly no reason, seeing no new remedy has been provided, why it should not be adopted and applied here. For notwithstanding it may be said that the right claimed in this case is given by act of the legislature, yet it is nothing more than what was allowed and given by the common law before and at the time, and therefore may very properly be considered as declaratory or made in affirmance of it.

It would no doubt be more convenient and advantageous for the widow to be endowed in all cases, if it were practicable, by metes and bounds, and particularly in this case, the same as where the husband was sole seised ; even if it were for no other reason, than that she might enjoy her portion of the land in severalty. It may be however, that for want of a Court of Chancery here, this cannot be done ; yet if it be true as is alleged, that the defendant has become the owner of the whole of the land in fee, I do not see any solid reason why she might not have had it so delivered to her upon a recovery in this action, had there been an averment introduced into the declaration, showing that the defendant had become sole owner of the whole. Her portion then would have been one-sixth thereof. Had a partition been made between the heirs of William Adams and the defendant, who, it is said, had become the owner of Alexander Adams' moiety in the land, before the sale of the moiety belonging to the heirs of William Adams, it is perfectly clear that the demandant could have recovered and had her portion of the land laid off by metes and bounds. But since instead of making a partition, he has become, by purchase, the sole owner of the whole land, thereby rendering a partition entirely useless as well as unnecessary for the purpose of setting out the demandant's claim by metes and bounds, I must confess that I can perceive no good

(Brown *v.* Adams.)

reason why she should not have had her one-sixth of the whole laid off by metes and bounds, had the declaration been framed as suggested. There would certainly be nothing inequitable or unjust in it; on the contrary, equity would enforce it, under any circumstances, had we a Court of Chancery. In *Moore* v. *Black*, (*Talb. Ca.* 126,) it was held to be a good ground for a Court of Chancery's sustaining a bill filed by the widow, to have dower assigned to her out of lands, of which her husband died seised of an undivided moiety only, because upon a recovery in a writ of dower, she could not be put into possession otherwise than of a third of an undivided moiety: but under a decree of the Court of Chancery, partition could be made so as to give her exclusive possession of her right, that she might have the sole enjoyment of it.

The judgment of the court below is reversed; and judgment is rendered by this court on the demurrer for the demandants.

Judgment reversed.